# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 22-1350V

* * * * * * * * * * * * * * * * * * * * * * * *
                       *

DAVID HUNTER,               *        Chief Special Master Corcoran
                       *

        Petitioner,     *        Filed:  September 17, 2025

                       *
    v.                  *
                       *

SECRETARY OF HEALTH AND    *
HUMAN SERVICES           *
                       *

        Respondent.    *
                       *
* * * * * * * * * * * * * * * * * * * * * * * *

*Howard Gold,* Gold Law Firm, LLC, Wellesley, MA, for Petitioner

*Mary Holmes,* U.S. Department of Justice, Washington, DC, for Respondent

## ENTITLEMENT DECISION[1]

On September 22, 2022, David Hunter filed a petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program).[2] Petitioner alleges that he developed sudden sensorineural hearing loss ("SSNHL") due to an influenza ("flu") vaccine received on September 24, 2019. Petition (ECF No. 1) at 1.

After the claim's initiation, I held a status conference with the parties, informing the Petitioner that claims that covered vaccines can cause SSNHL are far more often than not unsuccessful. *See* Order, dated February 4, 2025 (ECF No. 27) (the "Show Cause Order"). But I invited him to marshal whatever more recent scientific or medical independent evidence might exist in support of such a claim that had not been previously considered by me or any other special

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

masters. Show Cause Order at 2. If he did so, and established that there was some previously-unconsidered basis for finding causation, then the claim could proceed.

The parties complied with my Order and have filed briefs in support of their positions. *See* Petitioner's Response, dated April 29, 2025 (ECF No. 28) ("Br."); Respondent's Rule 4(c) Report and Response, dated May 29, 2025 (ECF No. 29) ("Opp."). Now, and based on my review of the record and the parties' arguments, I find that Petitioner has not established sufficient evidence to go forward with this case, on the basis of a theory so often rejected. As a result, entitlement cannot be determined in his favor, and this matter is appropriately dismissed.

## I.    Brief Fact Summary

Petitioner was 59 years old when he received a flu vaccine from his primary care provider on September 24, 2019. Ex. 1 at 1. Approximately one week later (October 1st), he went to South Florida Ear-Nose-Throat ("ENT") Associates reporting a three-day history of right-sided hearing loss. Ex. 4 at 81. He noted at this time, however, that he had suffered a minor head injury three weeks before (meaning pre-vaccination), and that he awoke several days before his ENT visit with the reported hearing loss symptoms. *Id.* at 80, 85.

Mr. Hunter subsequently underwent otoscopic audiometry exams, and was assessed with acquired nasal deformity, subjective tinnitus of the right ear, and unilateral SSNHL. Ex. 4 at 83. He was prescribed prednisone, and directed to follow up if his hearing did not improve. *Id*. at 83–84.

In mid-October 2019, Petitioner underwent a brain MRI that was unremarkable apart from evidence of bilateral chronic sinusitis. Ex. 4 at 52, 56. He later returned to the ENT with complaints of dizziness, adding that his hearing loss had not improved despite the prednisone. *Id.* at 52. He also now noted that he had received the flu vaccine three days prior to the start of his symptoms. *Id.* He was prescribed an antibiotic and directed to return for a course of three ear canal steroid injections. *Id.* at 54–55.

Petitioner returned to his ENT for his first right ear canal steroid injection on November 13, 2019. Ex. 4 at 28. His right ear hearing loss was now deemed stable, and he was started on a second course of antibiotics for chronic sinusitis. *Id*. He received several additional right ear canal steroid injections that same month. *Id*. at 17, 20. By the time of a November 25, 2019, visit, Mr. Hunter noted that some hearing had returned to his right ear. *Id.* at 17.

Petitioner had a follow-up with his ENT on December 19, 2019 (now slightly less than three months post-vaccination) and reported improvement with hearing in his right ear but some

ongoing tinnitus. Ex. 4 at 6. He was now assessed with unilateral SSNHL, nasal deformity, and subjective tinnitus of the right ear. *Id.*

In the winter of 2020, Petitioner was admitted to the hospital for a bronchoscopy. Ex. 5 at 2086. Although Petitioner claimed in a medical history provided to treaters that he had some form of allergy to flu vaccines that had caused him to "become [*sic*] deaf in right ear," a physical exam was negative for hearing loss. *Id.* at 2086, 2088. Treatment records from subsequent doctor's visits are silent on the claimed SSNHL vaccine injury.

## II.    Parties' Arguments

*Petitioner*

Regarding the mandate of my Show Cause order—to provide whatever new evidence might exist that would support a claim that the flu vaccine can cause SSNHL—Petitioner references an article that he purports to evaluate "studies from the COVID-19 vaccines and their impact on hearing loss and SNHL." Br. at 1. However (and putting aside the fact that this case involves a flu vaccine—and that COVID vaccines are not covered by the Vaccine Program in any event), *Petitioner did not file this item of literature*.

Otherwise, Petitioner maintains that fairness requires that he be given the opportunity to have an expert review his medical history and to identify literature and/or a theory in support of the claim. Br. at 1–2. (Of course, my Show Cause Order expressly invited Petitioner to consult with an expert for purposes of responding to it (*see* Show Cause Order at 2)—but he apparently did not do so). His attorney also contends that he is himself unable to "issue a medical theory of causation," heightening the need for expert assistance. Br. at 3.

*Respondent*

Respondent makes two arguments against entitlement. First, he contends that the Act's "severity requirement" (Section 11(c)(1)) is not met. Opp. at 4–5. Although Petitioner has maintained in witness statements that his hearing loss was permanent, medical records filed in this case support the conclusion that it did not persist beyond three months of vaccination. *Id.* at 5. In fact, Petitioner long sought additional record substantiation for this element of his claim but was unable to do so. *Id.*

Second, Respondent observes that despite the opportunity provided by my Show Cause Order, Petitioner has not identified any more-recent medical or scientific support for the contention that the flu vaccine (or any other covered vaccine) can cause SSNHL. Opp at 5–6. Although Petitioner demands the opportunity to obtain an expert's assistance for the claim, the Show Cause

Order permitted him at least the chance to consult with an expert. *Id.* at 6. And it is otherwise reasonable for a special master to rely on prior determinations in assessing a claim's strength. *Id.* at 6–7. Accordingly, entitlement is properly denied.

## III.    Applicable Law

### A.    *Petitioner's Overall Burden in Vaccine Program Cases*

To receive compensation in the Vaccine Program, a petitioner must prove either: (1) that he suffered a "Table Injury"—i.e., an injury falling within the Vaccine Injury Table— corresponding to one of the vaccinations in question within a statutorily prescribed period of time or, in the alternative, (2) that his illnesses were actually caused by a vaccine (a "Non-Table Injury"). *See* Sections 13(a)(1)(A), 11(c)(1), and 14(a), as amended by 42 C.F.R. § 100.3; § 11(c)(1)(C)(ii)(I); *see also Moberly ex rel. Moberly v. Sec'y of Health & Hum. Servs.,* 592 F.3d 1315, 1321 (Fed. Cir. 2010); *Capizzano v. Sec'y of Health & Hum. Servs.*, 440 F.3d 1317, 1320 (Fed. Cir. 2006).[3] There is no Table claim for the injury of SSNHL.

For both Table and Non-Table claims, Vaccine Program petitioners bear a "preponderance of the evidence" burden of proof. Section 13(1)(a). That is, a petitioner must offer evidence that leads the "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the judge of the fact's existence." *Moberly*, 592 F.3d at 1322 n.2; *see also Snowbank Enter. v. United States*, 6 Cl. Ct. 476, 486 (1984) (mere conjecture or speculation is insufficient under a preponderance standard). Proof of medical certainty is not required. *Bunting v. Sec'y of Health & Hum. Servs.*, 931 F.2d 867, 873 (Fed. Cir. 1991). In particular, a petitioner must demonstrate that the vaccine was "not only [the] but-for cause of the injury but also a substantial factor in bringing about the injury." *Moberly*, 592 F.3d at 1321 (quoting *Shyface v. Sec'y Health & Hum. Servs.*, 165 F.3d 1344, 1352–53 (Fed.Cir.1999)); *Pafford v. Sec'y of Health & Hum. Servs.*, 451 F.3d 1352, 1355 (Fed. Cir. 2006). A petitioner may not receive a Vaccine Program award based solely on his assertions; rather, the petition must be supported by either medical records or by the opinion of a competent physician. Section 13(a)(1).

In attempting to establish entitlement to a Vaccine Program award of compensation for a Non-Table claim, a petitioner must satisfy all three of the elements established by the Federal Circuit in *Althen v. Sec'y Health & Hum. Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005): "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause

---

[3] Decisions of special masters (some of which I reference in this ruling) constitute persuasive but not binding authority. *Hanlon v. Sec'y of Health & Hum. Servs.*, 40 Fed. Cl. 625, 630 (1998). By contrast, Federal Circuit rulings concerning legal issues are binding on special masters. *Guillory v. Sec'y of Health & Hum. Servs.*, 59 Fed. Cl. 121, 124 (2003), *aff'd* 104 F. Appx. 712 (Fed. Cir. 2004); *see also Spooner v. Sec'y of Health & Hum. Servs.*, No. 13-159V, 2014 WL 504728, at *7 n.12 (Fed. Cl. Spec. Mstr. Jan. 16, 2014).

and effect showing that the vaccination was the reason for the injury; and (3) a showing of proximate temporal relationship between vaccination and injury."

Each of the *Althen* prongs requires a different showing. Under *Althen* prong one, petitioners must provide a "reputable medical theory," demonstrating that the vaccine received *can cause* the type of injury alleged. *Pafford*, 451 F.3d at 1355–56 (citations omitted). To satisfy this prong, a petitioner's theory must be based on a "sound and reliable medical or scientific explanation." *Knudsen v. Sec'y of Health & Hum. Servs.*, 35 F.3d 543, 548 (Fed. Cir. 1994). Such a theory must only be "legally probable, not medically or scientifically certain." *Id.* at 549.

Petitioners may satisfy the first *Althen* prong without resort to medical literature, epidemiological studies, demonstration of a specific mechanism, or even a generally accepted medical theory. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1378–79 (Fed.Cir.2009) (citing *Capizzano*, 440 F.3d at 1325–26). Special masters, despite their expertise, are not empowered by statute to conclusively resolve what are essentially thorny scientific and medical questions, and thus scientific evidence offered to establish *Althen* prong one is viewed "not through the lens of the laboratorian, but instead from the vantage point of the Vaccine Act's preponderant evidence standard." *Id.* at 1380. Accordingly, special masters must take care not to increase the burden placed on petitioners in offering a scientific theory linking vaccine to injury. *Contreras v. Sec'y of Health & Hum. Servs*, 121 Fed. Cl. 230, 245 (2015), *vacated and remanded*, 844 F.3d 1363 (Fed. Cir. 2017).

In discussing the evidentiary standard applicable to the first *Althen* prong, the Federal Circuit has consistently rejected the contention that it can be satisfied merely by establishing the proposed causal theory's scientific or medical *plausibility*. *See Cerrone v. Sec'y of Health & Hum. Servs.*, 146 F.4th 1113, 1122 (Fed. Cir. 2025); *Kalajdzic v. Sec'y of Health & Hum. Servs.*, No. 2023-1321, 2024 WL 3064398, at *2 (Fed. Cir. June 20, 2024) (arguments "for a less than preponderance standard" deemed "plainly inconsistent with our precedent" (citing *Moberly*, 592 F.3d at 1322)); *Boatmon v. Sec'y of Health & Hum. Servs.*, 941 F.3d 1351, 1359 (Fed. Cir. 2019); *see also Howard v. Sec'y of Health & Hum. Servs.*, 2023 WL 4117370, at *4 (Fed. Cl. May 18, 2023) ("[t]he standard has been preponderance for nearly four decades"), *aff'd*, 2024 WL 2873301 (Fed. Cir. June 7, 2024) (unpublished). And petitioners always have the ultimate burden of establishing their *overall* Vaccine Act claim with preponderant evidence. *W.C. v. Sec'y of Health & Hum. Servs.*, 704 F.3d 1352, 1356 (Fed. Cir. 2013) (citations omitted); *Tarsell v. United States*, 133 Fed. Cl. 782, 793 (2017) (noting that *Moberly* "addresses the petitioner's overall burden of proving causation-in-fact under the Vaccine Act" by a preponderance standard).

The second *Althen* prong requires proof of a logical sequence of cause and effect, usually supported by facts derived from a petitioner's medical records. *Althen*, 418 F.3d at 1278; *Andreu*, 569 F.3d at 1375–77; *Capizzano*, 440 F.3d at 1326; *Grant v. Sec'y of Health & Hum. Servs.*, 956

F.2d 1144, 1148 (Fed. Cir. 1992). In establishing that a vaccine "did cause" injury, the opinions and views of the injured party's treating physicians are entitled to some weight. *Andreu*, 569 F.3d at 1367; *Capizzano*, 440 F.3d at 1326 ("medical records and medical opinion testimony are favored in vaccine cases, as treating physicians are likely to be in the best position to determine whether a 'logical sequence of cause and effect show[s] that the vaccination was the reason for the injury'") (quoting *Althen*, 418 F.3d at 1280). Medical records are generally viewed as particularly trustworthy evidence, since they are created contemporaneously with the treatment of the patient. *Cucuras v. Sec'y Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 2023).

Medical records and statements of a treating physician, however, do not *per se* bind the special master to adopt the conclusions of such an individual, even if they must be considered and carefully evaluated. Section 13(b)(1) (providing that "[a]ny such diagnosis, conclusion, judgment, test result, report, or summary shall not be binding on the special master or court"); *Snyder v. Sec'y of Health & Hum. Servs.*, 88 Fed. Cl. 706, 746 n.67 (2009) ("there is nothing . . . that mandates that the testimony of a treating physician is sacrosanct—that it must be accepted in its entirety and cannot be rebutted"). As with expert testimony offered to establish a theory of causation, the opinions or diagnoses of treating physicians are only as trustworthy as the reasonableness of their suppositions or bases. The views of treating physicians should be weighed against other, contrary evidence also present in the record—including conflicting opinions among such individuals. *Hibbard v. Sec'y of Health & Hum. Servs.*, 100 Fed. Cl. 742, 749 (2011) (not arbitrary or capricious for special master to weigh competing treating physicians' conclusions against each other), *aff'd*, 698 F.3d 1355 (Fed. Cir. 2012); *Veryzer v. Sec'y of Dept. of Health & Hum. Servs.*, No. 06-522V, 2011 WL 1935813, at *17 (Fed. Cl. Spec. Mstr. Apr. 29, 2011), *mot. for review den'd*, 100 Fed. Cl. 344, 356 (2011), *aff'd without opinion*, 475 F. Appx. 765 (Fed. Cir. 2012).

The third *Althen* prong requires establishing a "proximate temporal relationship" between the vaccination and the injury alleged. *Althen*, 418 F.3d at 1281. That term has been equated to the phrase "medically-acceptable temporal relationship." *Id.* A petitioner must offer "preponderant proof that the onset of symptoms occurred within a timeframe which, given the medical understanding of the disorder's etiology, it is medically acceptable to infer causation." *de Bazan v. Sec'y of Health & Hum. Servs.*, 539 F.3d 1347, 1352 (Fed. Cir. 2008). The explanation for what is a medically acceptable timeframe must align with the theory of how the relevant vaccine can cause an injury (*Althen* prong one's requirement). *Id.* at 1352; *Shapiro v. Sec'y of Health & Hum. Servs.*, 101 Fed. Cl. 532, 542 (2011), *recons. den'd after remand*, 105 Fed. Cl. 353 (2012), *aff'd mem.*, 503 F. Appx. 952 (Fed. Cir. 2013); *Koehn v. Sec'y of Health & Hum. Servs.*, No. 11-355V, 2013 WL 3214877 (Fed. Cl. Spec. Mstr. May 30, 2013), *mot. for rev. den'd* (Fed. Cl. Dec. 3, 2013), *aff'd*, 773 F.3d 1239 (Fed. Cir. 2014).

B.    *Legal Standards Governing Factual Determinations*

The process for making determinations in Vaccine Program cases regarding factual issues begins with consideration of the medical records. Section 11(c)(2). The special master is required to consider "all [ ] relevant medical and scientific evidence contained in the record," including "any diagnosis, conclusion, medical judgment, or autopsy or coroner's report which is contained in the record regarding the nature, causation, and aggravation of the petitioner's illness, disability, injury, condition, or death," as well as the "results of any diagnostic or evaluative test which are contained in the record and the summaries and conclusions." Section 13(b)(1)(A). The special master is then required to weigh the evidence presented, including contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (determining that it is within the special master's discretion to determine whether to afford greater weight to contemporaneous medical records than to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is evidenced by a rational determination).

As noted by the Federal Circuit, "[m]edical records, in general, warrant consideration as trustworthy evidence." *Cucuras*, 993 F.2d at 1528; *Doe/70 v. Sec'y of Health & Hum. Servs.*, 95 Fed. Cl. 598, 608 (2010) ("[g]iven the inconsistencies between petitioner's testimony and his contemporaneous medical records, the special master's decision to rely on petitioner's medical records was rational and consistent with applicable law"), *aff'd*, *Rickett v. Sec'y of Health & Hum. Servs.*, 468 F. App'x 952 (Fed. Cir. 2011) (non-precedential opinion). A series of linked propositions explains why such records deserve some weight: (i) sick people visit medical professionals; (ii) sick people attempt to honestly report their health problems to those professionals; and (iii) medical professionals record what they are told or observe when examining their patients in as accurate a manner as possible, so that they are aware of enough relevant facts to make appropriate treatment decisions. *Sanchez v. Sec'y of Health & Hum. Servs.*, No. 11–685V, 2013 WL 1880825, at *2 (Fed. Cl. Spec. Mstr. Apr. 10, 2013); *Cucuras v. Sec'y of Health & Hum. Servs.*, 26 Cl. Ct. 537, 543 (1992), *aff'd*, 993 F.2d at 1525 (Fed. Cir. 1993) ("[i]t strains reason to conclude that petitioners would fail to accurately report the onset of their daughter's symptoms").

Accordingly, if the medical records are clear, consistent, and complete, then they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03–1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). Indeed, contemporaneous medical records are often found to be deserving of greater evidentiary weight than oral testimony—especially where such testimony conflicts with the record evidence. *Cucuras*, 993 F.2d at 1528; *see also Murphy v. Sec'y of Health & Hum. Servs.*, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed. Cir. 1992), *cert. den'd*, *Murphy v. Sullivan*, 506 U.S. 974 (1992) (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 396 (1947) ("[i]t has generally been held that oral testimony which is in conflict with contemporaneous documents is entitled to little evidentiary

7

weight.")).

However, the Federal Circuit has also noted that there is no formal "presumption" that records are accurate or superior on their face to other forms of evidence. *Kirby v. Sec'y of Health & Hum. Servs.,* 997 F.3d 1378, 1383 (Fed. Cir. 2021). There are certainly situations in which compelling oral or written testimony (provided in the form of an affidavit or declaration) may be more persuasive than written records, such as where records are deemed to be incomplete or inaccurate. *Campbell v. Sec'y of Health & Hum. Servs.*, 69 Fed. Cl. 775, 779 (2006) ("like any norm based upon common sense and experience, this rule should not be treated as an absolute and must yield where the factual predicates for its application are weak or lacking"); *Lowrie*, 2005 WL 6117475, at *19 ("[w]ritten records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent") (quoting *Murphy*, 23 Cl. Ct. at 733)). Ultimately, a determination regarding a witness's credibility is needed when determining the weight that such testimony should be afforded. *Andreu*, 569 F.3d at 1379; *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

When witness testimony is offered to overcome the presumption of accuracy afforded to contemporaneous medical records, such testimony must be "consistent, clear, cogent, and compelling." *Sanchez*, 2013 WL 1880825, at *3 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). In determining the accuracy and completeness of medical records, the Court of Federal Claims has listed four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203–04 (2013), *aff'd*, 746 F.3d 1334 (Fed. Cir. 2014). In making a determination regarding whether to afford greater weight to contemporaneous medical records or other evidence, such as testimony at hearing, there must be evidence that this decision was the result of a rational determination. *Burns*, 3 F.3d at 417.

C.    *Analysis of Expert Testimony*

Establishing a sound and reliable medical theory often requires a petitioner to present expert testimony in support of his claim. *Lampe v. Sec'y of Health & Hum. Servs.*, 219 F.3d 1357, 1361 (Fed. Cir. 2000). Vaccine Program expert testimony is usually evaluated according to the factors for analyzing scientific reliability set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 594–96 (1993). *See Cedillo v. Sec'y of Health & Hum. Servs.*, 617 F.3d 1328, 1339 (Fed. Cir. 2010) (citing *Terran v. Sec'y of Health & Hum. Servs.*, 195 F.3d 1302, 1316 (Fed. Cir. 1999). Under *Daubert*, the factors for analyzing the reliability of testimony are:

(1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and whether there are standards for controlling the error; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community.

*Terran*, 195 F.3d at 1316 n.2 (citing *Daubert*, 509 U.S. at 592–95).

In the Vaccine Program the *Daubert* factors play a slightly different role than they do when applied in other federal judicial settings, like the district courts. Typically, *Daubert* factors are employed by judges (in the performance of their evidentiary gatekeeper roles) to exclude evidence that is unreliable or could confuse a jury. By contrast, in Vaccine Program cases these factors are used in the *weighing* of the reliability of scientific evidence proffered. *Davis v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 53, 66–67 (2010) ("uniquely in this Circuit, the *Daubert* factors have been employed also as an acceptable evidentiary-gauging tool with respect to persuasiveness of expert testimony already admitted"). The flexible use of the *Daubert* factors to evaluate the persuasiveness and reliability of expert testimony has routinely been upheld. *See, e.g.*, *Snyder*, 88 Fed. Cl. at 742–45. In this matter (as in numerous other Vaccine Program cases), *Daubert* has not been employed at the threshold, to determine what evidence should be admitted, but instead to determine whether expert testimony offered is reliable and/or persuasive.

Respondent frequently offers one or more experts in order to rebut a petitioner's case. Where both sides offer expert testimony, a special master's decision may be "based on the credibility of the experts and the relative persuasiveness of their competing theories." *Broekelschen v. Sec'y of Health & Hum. Servs.*, 618 F.3d 1339, 1347 (Fed. Cir. 2010) (citing *Lampe*, 219 F.3d at 1362). However, nothing requires the acceptance of an expert's conclusion "connected to existing data only by the *ipse dixit* of the expert," especially if "there is simply too great an analytical gap between the data and the opinion proffered." *Snyder*, 88 Fed. Cl. at 743 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 146 (1997)); *see also Isaac v. Sec'y of Health & Hum. Servs.*, No. 08–601V, 2012 WL 3609993, at *17 (Fed. Cl. Spec. Mstr. July 30, 2012), *mot. for review den'd*, 108 Fed. Cl. 743 (2013), *aff'd*, 540 F. App'x 999 (Fed. Cir. 2013) (citing *Cedillo*, 617 F.3d at 1339). Weighing the relative persuasiveness of competing expert testimony, based on a particular expert's credibility, is part of the overall reliability analysis to which special masters must subject expert testimony in Vaccine Program cases. *Moberly*, 592 F.3d at 1325–26 ("[a]ssessments as to the reliability of expert testimony often turn on credibility determinations"); *see also Porter v. Sec'y of Health & Hum. Servs.*, 663 F.3d 1242, 1250 (Fed. Cir. 2011) ("this court has unambiguously explained that special masters are expected to consider the credibility of expert witnesses in evaluating petitions for compensation under the Vaccine Act").

D.     *Consideration of Medical Literature*

Both parties filed numerous items of medical and scientific literature in this case, but not all such items factor into the outcome of this decision. While I have reviewed all the medical literature submitted in this case, I discuss only those articles that are most relevant to my determination and/or are central to Petitioner's case—just as I have not exhaustively discussed every individual medical record filed. *Moriarty v. Sec'y of Health & Hum. Servs.*, No. 2015–5072, 2016 WL 1358616, at *5 (Fed. Cir. Apr. 6, 2016) ("[w]e generally presume that a special master considered the relevant record evidence even though he does not explicitly reference such evidence in his decision") (citation omitted); *see also Paterek v. Sec'y of Health & Hum. Servs.,* 527 F. App'x 875, 884 (Fed. Cir. 2013) ("[f]inding certain information not relevant does not lead to—and likely undermines—the conclusion that it was not considered").

E.     *Determination to Resolve Case without a Hearing*

I have opted to decide entitlement in this case based on written submissions and evidentiary filings, including the expert reports filed by each side. The Vaccine Act and Rules not only contemplate but encourage special masters to decide petitions on the papers rather than via evidentiary hearing, where (in the exercise of their discretion) they conclude that the former means of adjudication will properly and fairly resolve the case. Section 12(d)(2)(D); Vaccine Rule 8(d). The choice to do so has been affirmed on appeal. *See D'Toile v. Sec'y of Health & Hum. Servs.*, No. 15-85V, 2018 WL 1750619, at *2 (Fed. Cir. Apr. 12, 2018); *see also Hooker v. Sec'y of Health & Hum. Servs.*, No. 02-472V, 2016 WL 3456435, at *21 n.19 (Fed. Cl. Spec. Mstr. May 19, 2016) (citing numerous cases where special masters decided on the papers in lieu of hearing and that decision was upheld). I am simply not required to hold a hearing in every matter, no matter the preferences of the parties. *See Hovey v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 397, 402–03 (1997) (special master acted within his discretion in denying evidentiary hearing); *Burns*, 3 F.3d at 417.

## ANALYSIS

Program claimants alleging SSNHL after vaccination have consistently been unsuccessful, since the causation theory has been proven time and again to be scientifically unreliable. *See e.g.*, *Legault v. Sec'y of Health & Hum. Servs*., No. 21-2343V, slip op. at 23–26 (Fed. Cl. Spec. Mstr. Jan. 2, 2025), *mot. for review den'd*, 2025 WL 2158693 (Fed. Cl. June 27, 2025); *Vanore v. Sec'y of Health & Hum. Servs.*, No. 21-0870V, 2024 WL 3200287 (Fed. Cl. Spec. Mstr. May 31, 2024) (determining flu vaccine not shown to be causal of SNHL); *Herms v. Sec'y of Health & Hum. Servs.*, No. 19-70V, 2024 WL 1340669 (Fed. Cl. Spec. Mstr. Mar. 4, 2024) (finding Tdap vaccine

not causal of tinnitus and left-sided hearing loss) (S.M. Dorsey); *M.R. v. Sec'y of Health & Hum. Servs.*, No. 16-1024, 2023 WL 4936727 (Fed. Cl. Spec. Mstr. June 30, 2023) (finding that evidence supported the conclusion that Petitioner's acoustic neuroma/vestibular schwannoma was the "factor unrelated" cause of his SSNHL); *Henry v. Sec'y of Health of Hum. Servs.*, No. 17-721V, 2022 WL 2301321 (Fed. Cl. Spec. Mstr. May 2, 2022) (holding that flu vaccine unlikely caused claimant's right sided tinnitus) (S.M. Oler); *Kelly v. Sec'y of Health & Hum. Servs.,* No. 16-878V, 2021 WL 5276373, at *23 (Fed. Cl. Spec. Mstr. Oct. 18, 2021), *mot. for review den'd*, 2022 WL 2314746 (Fed. Cl. Apr. 13, 2022) (petitioner failed to establish any preexisting condition, leading to hearing loss, that was aggravated by the flu vaccine; *Inamdar v. Sec'y of Health & Hum. Servs.*, No. 15-1173V, 2019 WL 1160341, at *16 (Fed. Cl. Spec. Mstr. Feb. 8, 2019) (referencing multiple prior negative decisions involving SSNHL or hearing loss); *Donica v. Sec'y of Health & Hum. Servs.*, No. 08-625V, 2010 WL 3735707, at *1, 10 (Fed. Cl. Spec. Mstr. Aug. 31, 2010) (flu vaccine not demonstrated to cause adult hearing loss); *Hopkins v. Sec'y of Health & Hum. Servs.*, Nos. 00-745V & 00-746V, 2007 WL 2454038, at *13 (Fed. Cl. Spec. Mstr. Aug. 10, 2007) (noting that the specific onset of hearing loss in child siblings after receipt of several vaccines could not be established).

Because of the above, I expressed reasoned skepticism to Petitioner that this claim would succeed. I am of course empowered in deciding Vaccine Act cases to rely on my prior exposure to certain kinds of causation theories when confronted with claims that are similar. *Garris v. Sec'y of Health & Hum. Servs.*, No. 22-1354V, 2025 WL 2401999, at *30 (Fed. Cl. Spec. Mstr. June 20, 2025) ("where a theory of causation is reasonably doubted—and that doubt stems from the special master's prior exposure to the theory in many prior cases—that theory should not be entertained anew (except where the claimant can point to novel scientific or medical understanding sufficient to breathe life into a theory previously deemed wanting)"). Only by "triaging" claims that repeat failed theories from those that are likely to succeed—or that rely on novel contentions not previously considered (and hence worthy of considered analysis) —can special masters ensure that the Program's goal of expedient justice is met. Moreover, the Vaccine Program lacks the resources to take every claim to trial, or to engage in extensive expert discovery—and it is judicially wasteful to devote time and energy to claims that a special master has learned from repeated prior exposure will not likely prove worthwhile.

Despite due opportunity, Petitioner has wholly failed to meet the moment. He has offered no additional medical or scientific literature in support of the claim—and even failed to file the one purportedly-helpful item of literature referenced in his brief. He also declined the opportunity to consult with an expert, to at least outline what his theory of causation would be. Accordingly, I am presented with no reason to expect that this claim's outcome would be any different from the majority of cases involving claims of vaccine-caused SSNHL. Thus, the claim is properly dismissed for inability to satisfy the first prong of *Althen*, 418 F.3d at 1278.

Petitioner's brief also contends that fairness considerations mandate permitting him the chance to obtain an expert's opinion in support of the claim. Admittedly, there are situations where expert input should be allowed—even when a special master grounds skepticism in a claim's likely success in significant prior experience with the theory at issue. *See, e.g.*, *Stewart-Robinson v. Sec'y of Health & Hum. Servs.*, 173 Fed. Cl. 567, 581 (2024) (permitting expert report on causation issue). Here, however, *Petitioner was provided a chance to bulwark his claim*—not only to file literature bearing on the topic of vaccine-caused SSNHL, but to *consult* with an expert to that end. *See* Show Cause Order at 2 (giving Petitioner nearly 90 days to consult with an expert before responding). Petitioner did not do so—and he has not otherwise shown why the many prior cases denying entitlement when SSNHL was alleged to be a vaccine injury are inapposite to the present circumstances. There is no reason to litigate this claim further.

## CONCLUSION

A Program entitlement award is only appropriate for claims supported by preponderant evidence. Here, Petitioner has not made such a showing. Petitioner is therefore not entitled to compensation.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[4]

**IT IS SO ORDERED**.

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[4] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.